IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER GOODVINE,

                Plaintiff,                    OPINION and ORDER

      v.                                              08-cv-702-bbc

WILLIAM SWIEKATOWSKI, SARAH COOPER,
MICHAEL DONOVAN, WARDEN POLLARD,
PETER ERICKSEN, MICHAEL MOHR,
TOM GOZINSKE, RICK RAEMISCH,
JOHN BETT, DAN WESTFIELD,
MATTHEW FRANK and DEPARTMENT OF CORRECTIONS,[1]

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Three claims remain in this prisoner civil rights case brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act:

> (1) defendants Swiekatowski, Cooper, Mohr, Pollard, Gozinske, Raemisch, Bett, Westfield, Ericksen, Frank and the Department of Corrections allegedly violated plaintiff Christopher Goodvine's rights under RLUIPA by refusing to allow him to keep three Islamic texts and a set of religious papers in his cell

---

[1] In his complaint, plaintiff identified defendant Michael Donovan as "M. Donovan." I have amended the caption to reflect Donovan's full name as stated in defendants' summary judgment submissions.

1

> while in segregation;
>
> (2) defendant Donovan allegedly violated plaintiff's rights under the establishment clause and the equal protection clause by refusing to provide him with a copy of the Qur'an while providing Bibles to Christian prisoners; and
>
> (3) defendant Swiekatowski and the Department of Corrections violated plaintiff's rights under RLUIPA by prohibiting him from ordering his own copy of the Qur'an.

Defendants have moved for summary judgment with respect to each of these claims, dkt. #69; plaintiff has moved for summary judgment with respect to claim (1). Dkt. #43. In addition, plaintiff has moved to exclude any expert testimony provided by Timothy Lundquist. Dkt. #68.

The first question to be answered in resolving these motions is which claims remain in dispute. The parties agree that, under Nelson v. Miller, 570 F.3d 868 (7th Cir. 2009), plaintiff cannot recover money damages for violations of RLUIPA. In light of Nelson, defendants argue that claim (3) is moot because plaintiff now has a copy of the Qur'an. Because plaintiff does not respond to this argument or discuss claim (3) in any of his briefs, I conclude that plaintiff agrees with defendants' view. Cincinnati Insurance Co. v. E. Atlantic Insurance Co., 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose argument permits inference of acquiescence and "acquiescence operates as a waiver").

I allowed the parties to file supplemental briefs and proposed findings of fact on the

question whether claim (1) is moot as well. Dkt. #96. It is undisputed that plaintiff was transferred recently to the Columbia Correctional Institution, which allows prisoners in segregation to keep additional religious texts in their cells. Plt.'s PFOF ¶ 156, dkt. #45. In addition, the Department of Corrections has just revised its policy on prisoner personal property to allow prisoners in segregation in *all* Wisconsin prisons to possess up to four religious publications in their cells. Dft.s' Supp. PFOF ¶ 134, dkt. #89. Once every 30 days, prisoners will be permitted to exchange these four publications for others that are stored with their personal property outside their cell. Id. at ¶ 137.

Either one of these events could be enough to moot plaintiff's claim. Lehn v. Holmes, 364 F.3d 862, 871 (7th Cir. 2004) ("When a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."); Sutton v. Rasheed, 323 F.3d 236, 248-49 (3d Cir. 2003) (prisoners' challenge to restrictions on religious texts moot when prison adopted new policy allowing prisoners to keep more property). Although the record is not clear regarding how many religious publications the Columbia prison allows prisoners to keep in segregation, plaintiff does not suggest in his supplemental response that prison officials are denying him access to any religious books that he needs to practice Islam. Two of the books plaintiff requested are hardcover books, which are not permitted under the new department policy, but plaintiff seems to acknowledge in his brief that he has access to

3

paperback editions of publications that would serve the same purpose. Plt.'s Br., at 9, dkt. #76. In any event, plaintiff does not argue that it would be a substantial burden on his religious exercise (the standard under RLUIPA, 42 U.S.C. § 2000cc-1(a)) to obtain paperback copies if he does not already possess them.

Instead, plaintiff argues in his supplemental response that the department's new policy does not moot his claim because nothing would stop the department from reverting to its old policy. He cites Kikumura v. Turner, 28 F.3d 592, 597 (7th Cir. 1994), in which the court concluded that a warden's new, more permissive policy regarding foreign language publications did not moot a prisoner's claim that prison officials had violated his First Amendment rights by censoring all the mail he received in Japanese. Kikumura is distinguishable because there was reason in that case to question the sincerity of the warden's actions. The court noted that the warden's "policies regarding foreign language publications have apparently ebbed and flowed throughout the course of the litigation." Id. at 597.

In the ordinary case, when "the defendants are public officials . . . [courts] place greater stock in their acts of self-correction, as long as they appear genuine." Magnuson v. City of Hickory Hills, 933 F.2d 562, 565 (7th Cir. 1991). In this case, the new policy is being adopted not at the whim of a particular warden but in a written policy applicable to the department as a whole. Plaintiff provides no reason to believe that the department will

reverse course once the case is over. Nelson, 570 F.3d at 882 (concluding that injunctive relief on prisoner's claim for religious diet was moot because "it is undisputed that Nelson currently receives a non-meat diet and there is no evidence in the record that the diet will be revoked"). Like the prisoner in Nelson, plaintiff's belief is "supported only by speculation and not evidence." Id.

Alternatively, plaintiff argues that his claim for declaratory relief remains even if his request for an injunction is moot. Although plaintiff is correct that declaratory relief does not always rise and fall with injunctive relief, the same justiciability requirements apply to claims for declaratory relief as for any other type of relief. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 138 (2007) ("The Declaratory Judgment Act did not (and could not) alter the constitutional definition of 'case or controversy' or relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question."). This means that the plaintiff must show that a declaration would alter the parties' legal relationship. Deveraux v. City of Chicago, 14 F.3d 328, 331 (7th Cir. 1994).

In the cases plaintiff cites, declaratory relief was discussed as a potential predicate to damages, Powell v. McCormack, 395 U.S. 486, 498-99 (1969), or as a substitute for injunctive relief for reasons unrelated to mootness. E.g., Steffel v. Thompson, 415 U.S. 452 (1974) (declaratory relief may be available to prevent threat of rights violation that has not yet occurred); Dickinson v. Indiana State Election Bd., 933 F.2d 497, 503 (7th Cir. 1991)

5

(declaratory relief may be appropriate when injunctive relief unavailable for equitable reasons). When monetary damages are unavailable *and* injunctive relief is moot, a federal lawsuit cannot be maintained on a request for declaratory relief alone. E.g., Cornucopia Institute v. U.S. Dept. of Agriculture, 560 F.3d 673, 676 (7th Cir. 2009) (concluding that claim for declaratory relief was moot after plaintiff received all its requested injunctive relief); St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 627-28 (7th Cir. 2007) (concluding that declaratory relief was moot along with injunctive relief). Because plaintiff's motion to exclude Lundquist's expert testimony is related to his RLUIPA claims only, I will deny that motion as moot as well.

This leaves plaintiff's claim of religious discrimination against defendant Donovan. This claim is not moot because monetary damages are available for claims such as this one that are brought under § 1983. Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306-07 (1986). In the screening order, dkt. #7, at 13-14, I concluded that the test for a claim of religious discrimination claim is the same whether it is analyzed under the equal protection clause or the establishment clause: was the defendant treating members of some religious faiths more favorably without a secular reason for doing so? Cruz v. Beto, 405 U.S. 319 (1972); Nelson, 570 F.3d at 880-82 (7th Cir. 2009); Kaufman v. McCaughtry, 419 F.3d 678, 683-84 (7th Cir. 2005). See also Board of Education of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 715 (O'Connor, J., concurring) ("[T]he Religion Clauses .

6

. . and the Equal Protection Clause as applied to religion—all speak with one voice on this point."). Neither side challenges this conclusion in their briefs.

With respect to this claim, plaintiff alleges that defendant Donovan, the prison chaplain, refused to provide him with a Qur'an, even though Donovan provided Christian prisoners with Bibles. It is undisputed that, in April 2007 and March 2008, plaintiff wrote defendant Donovan to request an "Arabic" Qur'an or an "Arabic/English" Qur'an and that Donovan told plaintiff each time that "Qur'ans are available from seg. staff."

Defendants do not argue that prison rules prohibited Donovan from providing plaintiff with a Qur'an or that Donovan did not harm plaintiff because plaintiff could have received a comparable Qur'an from segregation staff. Instead, defendants say that Donovan had no Qur'an to give plaintiff because he gives all the paperback Qur'ans and Bibles he receives to segregation staff. Dfts.' PFOF ¶ 129, dkt. #71 ("Whatever translations/versions of Bibles and Qurans that Chaplain Donovan receives, and which are soft-covered, he provides to the segregation unit so those books can be placed on the library cart that is circulated in segregation.")

Unfortunately for defendant Donovan, this argument cannot carry the day for him on summary judgment because his position is genuinely disputed by evidence adduced by plaintiff. First, plaintiff has submitted affidavits from two prisoners who aver that they requested and received Bibles from Donovan during the relevant time period. Ellanson Aff.,

7

dkt. #84; Gruenberg Aff., dkt. #83. At least one of these Bibles was a paperback. Second, plaintiff has submitted affidavits from two other prisoners who worked in the chapel library in 2007 and 2008. Brim Aff., dkt. #82; Williams Aff., dkt. #81. They aver that the library included "Arabic" Qur'ans or "Arabic/English" Qur'ans during that time. (Although plaintiff does not explain what he means by "Arabic" Qur'an or "Arabic/English" Qur'an, presumably he is describing the language in which the Qur'an is written. Defendants do not argue that Donovan was confused by plaintiff's request or that plaintiff would have no use for a Qur'an written in Arabic.)

Plaintiff has adduced additional evidence, but these two facts alone are enough to create a genuine issue of material fact on the question whether defendant Donovan was intentionally discriminating against plaintiff on the basis of religion. It may be that plaintiff's witnesses are mistaken or that Donovan mistakenly believed that no Qur'ans were available, but that is not a determination I can make on summary judgment. <u>Payne v. Pauley</u>, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.")

Defendants argue in the alternative that Donovan is entitled to qualified immunity, but that argument is misplaced. Qualified immunity applies when the law was not sufficiently clear to give the defendant "fair warning" that he was violating the plaintiff's

8

constitutional rights.  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  However, in applying the doctrine, courts must view the facts in the light most favorable to the plaintiff.  Gonzalez v. City of Elgin, 578 F.3d 526, 540 (7th Cir. 2009).  Thus, at this stage, I must assume that defendant Donovan had no secular reason for refusing to provide plaintiff a Qur'an from the chapel library.  The law has been clear for many years that religious discrimination is unconstitutional, even in the prison setting.  Cruz, 405 U.S. at 322 ("[I]f [a Buddhist prisoner] was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts, then there was palpable discrimination by the State against the Buddhist religion . . [in] violat[ion of] the First and Fourteenth Amendments.").  Because the remaining dispute in this case is one of *fact* rather than law, defendant Donovan is not entitled to qualified immunity.

Although I conclude that plaintiff is entitled to a trial on his claim against defendant Donovan, the damages available to plaintiff on this claim are limited.  Plaintiff cannot recover for emotional distress, 42 U.S.C. § 1997e(a)).

ORDER

IT IS ORDERED that

1. Plaintiff Christopher Goodvine's motion for partial summary judgment, dkt. #43, is DENIED.

2. Plaintiff's motion to exclude the expert testimony of Timothy Lundquist, dkt. #68, is DENIED as moot.

3. The motion for summary judgment filed by defendants William Swiekatowski, Sarah Cooper, Michael Donovan, William Pollard, Peter Ericksen, Michael Mohr, Tom Gozinske, Rick Raemisch, John Bett, Dan Westfield, Matthew Frank and the Department of Corrections, dkt. #69, is GRANTED with respect to plaintiff's claim that defendants Swiekatowski, Cooper, Mohr, Pollard, Gozinske, Raemisch, Bett, Westfield, Ericksen, Frank and the Department of Corrections violated plaintiff's rights under RLUIPA by refusing to allow him to keep three Islamic texts and a set of religious papers in his cell while in segregation and his claim that defendant Swiekatowski and the Department of Corrections violated plaintiff's rights under RLUIPA by prohibiting him from ordering his own copy of the Qur'an.  The complaint is DISMISSED as to these claims and defendants on the ground that the claims are moot.

4. Defendants' motion for summary judgment, dkt. #69, is DENIED with respect to plaintiff's claim that defendant Donovan discriminated against him on the basis of

religion by refusing to provide him with a Qur'an.

Entered this 4th day of January, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge

11